THE VILLAGE OF PRAIRIE DU ROCHER, Appellee, *vs.* THE
SCHOENING-KOENIGSMARK MILLING Co. Appellant.

*Opinion filed December 21, 1910.*

1. MUNICIPAL CORPORATIONS—*city or village may make entirely
new bed for stream.*  Under clause 30 of section 1 of article 5 of
the Cities and Villages act, a city or village, in altering or chang-
ing the channel of a water-course, is not limited to changes with-
in the original banks of the stream, but may make an entirely new
bed or course and divert the water from the old bed to the new
one, but in such case compensation must be paid for the injury to
riparian rights.

2. ORDINANCES—*signature of mayor or president of a village
board is no part of the ordinance itself.*  The signature of the
mayor or the president of a village board is merely the evidence
of his approval of the ordinance, and is no more a part of the
ordinance than are the minutes of the proceedings of the council
or board in which the vote on the ordinance is recorded.

3. EVIDENCE—*what not good ground for excluding ordinance.*
Where the copy of an ordinance introduced in evidence without
objection is certified under the hand and seal of the village clerk
and the president of the village board, an objection that the ordi-
nance was not signed by such president is not good ground for a
motion to exclude the ordinance. (*Schott* v. *People,* 89 Ill. 195,
and *City of Alton* v. *Hartford Ins. Co.* 72 id. 328, distinguished.)

4. SAME—*a specific objection to evidence is a waiver of other
objections.*  A specific objection to evidence, based solely upon a
particular point, is a waiver of objections to all points not speci-
fied or relied upon.

5. CONTRACTS—*when vice-president of corporation is presumed
to have authority to sign contract.*  The vice-president of a corpo-
ration acts for the president, and any contract pertaining to the
corporate affairs, within the general powers of such officer, exe-
cuted by him on behalf of the corporation, will, in the absence of
proof to the contrary, be presumed to have been made by the au-
thority of the corporation.

6. EMINENT DOMAIN—*when giving instruction as to setting off
special benefits is not harmful.*  Giving an instruction in a con-
demnation case authorizing the jury to set off against damages to
land not taken any special benefit the evidence might show would
accrue thereto is not harmful to defendant, even though there is
no direct testimony from the witness stand upon the question of

such benefit, where the jury viewed the premises and where no attempt is made to show the verdict was not within the evidence.

7. SAME—*the verdict need not fully set out description of land taken or damaged.* The verdict in a condemnation case must be definite and certain and should follow the description of the premises as given in the petition, but it is not necessary that the description shall be fully set out in the verdict, and it is sufficient if the description of the land taken or damaged is made clear and certain by the reference in the verdict to the description in the petition.

APPEAL from the County Court of Randolph county; the Hon. S. L. TAYLOR, Judge, presiding.

WISE, KEEFE & WHEELER, for appellant.

SPRIGG & GILSTER, and H. CLAY HORNER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a petition filed in the county court of Randolph county by the village of Prairie du Rocher, appellee, to condemn about 2.46 acres of land belonging to the Schoening-Koenigsmark Milling Company for the purpose of changing the course and channel of a certain creek which flows through said village. A cross-petition was filed, alleging damages to land not taken. On a hearing the jury assessed the damages of appellant for land actually taken at $750 and damages to that not taken at $600. A judgment was entered on the verdict, from which this appeal was prayed.

From the ordinance under which the appellee sought to condemn the land in question, and from the rest of the record in this case, it appears that said creek is comparatively small, and that it was proposed to change the channel within the village for some hundreds of feet, so as to connect with an old drainage ditch; that the new creek or ditch should be excavated to an average depth of not less than seven feet, twelve feet wide at the bottom; that the right of way should be not less than eighty feet wide, and

that all material excavated should be placed upon both sides of the ditch in a uniform manner, to serve as a levee.

Counsel for appellant contend that the appellee village had no authority to pass the ordinance in question. They argue that division 30 of section 1 of article 5 of the general Cities and Villages act, which provides that the city council or the president and board of trustees in villages shall have power "to deepen, widen, dock, cover, wall, alter or change channel of water-courses," (Hurd's Stat. 1909, p. 344,) authorizes the municipal authorities to change the location of the deepest part from one side to the other of the original bed of the water-course for navigation or commercial purposes but does not authorize them to make an entirely new bed for the stream. The channel of a stream, in its larger sense, is its bed from bank to bank; the hollow or course in which the water flows; (6 Cyc. 891, and cases cited; 25 Am. & Eng. Ency. of Law,—2d ed.—848, and cases cited; *Buttenuth* v. *St. Louis Bridge Co.* 123 Ill. 535; Webster's New Int. Dict.; 2 Words and Phrases, p. 1059.) Although it is true that the word is sometimes restricted to mean the deepest part of the stream which navigation follows, the more natural and reasonable construction of this provision of the statute is, that for the purpose of improving navigation, for the protection of a public road, or for any other public use, the public authorities can make an entirely new bed or course for the stream and divert the water thereto from the old bed, in which case, however, proper compensation must be paid to the owners of riparian rights injured thereby. (1 Lewis on Eminent Domain,—2d ed.—sec. 62.) If the construction of this provision of the Cities and Villages act contended for by the appellant be correct, then the words "alter or change" would be practically without meaning, as the word "widen" would give authority to make all the changes in the channel of a natural water-course which appellant contends are authorized by the words "alter or change."

It is further contended by appellant that there was no proof that the ordinance authorizing this proceeding was properly passed by the village authorities. At the close of all the petitioner's evidence counsel for appellant moved to exclude the ordinance on the ground that it was not properly passed, was not signed by the president of the village board and was not good evidence. Section 4 of article 5 of the general Cities and Villages act provides that "all ordinances, and the date of publication thereof, may be proven by the certificate of the clerk, under the seal of the corporation." (Hurd's Stat. 1909, p. 349.) Section 14 of chapter 51, on evidence, provides that "ordinances, or parts thereof, of any city, village, town or county, may be proved by a copy thereof, certified under the hand of the clerk or the keeper thereof, and the corporate seal, if there be any; if not, under his hand and private seal." (Hurd's Stat. 1909, p. 1119.) The copy of the ordinance here introduced in evidence was certified under the hand and seal of the village clerk and the president of the village board. Without these provisions of the statute as to the mode of proving ordinances it might have been incumbent on the party alleging the existence of this ordinance to prove each of the steps by which it was passed and given effect. It is competent for the legislature to enact that the simple production of an ordinance, or a copy thereof, shall be *prima facie* evidence that every step has been taken with reference to it, essential to make it a valid ordinance. The signature of the mayor or president of a village board to an ordinance is no part of the ordinance itself. It is merely the evidence of his approval of the ordinance, but it is no more a part of the ordinance than are the minutes of the proceedings of the council in which is recorded the vote by which the ordinance is passed. The ordinance need not bear, on its face, the evidence of all or any of these proceedings, except, of course, where it is signed by the mayor such signature will necessarily appear. (*Terre Haute and Indianapolis Rail-*

*road Co.* v. *Voelker*, 129 Ill. 540.)   Here the proof as to the passage of this ordinance brought it clearly within the statutory requirements above referred to.

The decisions of this court in *Schott* v. *People*, 89 Ill. 195, and *City of Alton* v. *Hartford Fire Ins. Co.* 72 id. 328, relied upon by appellant as holding that when the ordinance was objected to the petitioner should have shown, or offered to show, that the town had authority to pass it, are not in point under the present statutes.   Those decisions construed special charters granted to certain cities, and it is practically held in *Schott* v. *People, supra,* that under the general Cities and Villages act the production of an ordinance, or a certified copy thereof, would be *prima facie* evidence that every step had been taken essential to make the ordinance valid.   See, also, *Byars* v. *City of Mt. Vernon*, 77 Ill. 467; *Lindsay* v. *City of Chicago*, 115 id. 120; *Chicago and Alton Railway Co.* v. *Wilson*, 225 id. 50.

It does not appear that any objection was made when the ordinance was offered in evidence.   The only specific objection pointed out when the motion was made to exclude it at the close of petitioner's case was, as we have noted, that it was not signed by the president.   It could become a law without being signed by the president.   A specific objection to evidence, based solely on a particular point, is a waiver of objections to all other points not specified or relied on.   (*Terre Haute and Indianapolis Railroad Co.* v. *Voelker, supra.*)   No attempt is made in the argument to show that the ordinance was not properly passed, other than that it was not signed by the president.   On this record we deem this objection without force.

Further objection is made that a certain contract, agreement or permit for the appellant to maintain an intake pipe across the right of way and switch track of the St. Louis, Iron Mountain and Southern Railroad Company leading from said railroad company's main track to the mill of the milling company, for the purpose of furnishing water to

said mill from said Prairie du Rocher creek, was improperly admitted in evidence. It is urged that the agreement was signed by the vice-president of the railroad company, and that there is nothing in the record to show that said vice-president had authority to sign such an agreement. The vice-president acts for the president, and any contract pertaining to the corporate affairs within the general powers of such officer, executed by him on behalf of the corporation, will, in the absence of proof to the contrary, be presumed to have been done by the authority of the corporation. (*McCormick* v. *Unity Co.* 239 Ill. 306.) This agreement falls clearly within that rule.

The further objection is made by appellant that the fifth instruction given on behalf of petitioner was erroneous. This instruction, in substance, told the jury that they should allow as a set-off for damages to the land not taken, any special benefits that the evidence might show would accrue to that portion of the land not taken. It is contended that there is no evidence in the record tending to show that there were any benefits to the land not taken. Counsel for appellee apparently concede in their brief that there was no direct and positive evidence from the witness stand on this question, but they contend as the jury visited the premises their view was rightly, under the authorities, (*Stockton* v. *City of Chicago,* 136 Ill. 434; *Peoria Gas Light Co.* v. *Peoria Terminal Railway Co.* 146 id. 372; *Metropolitan Elevated Railway Co.* v. *Johnson,* 159 id. 434; *Sanitary District* v. *Loughran,* 160 id. 362;) considered as evidence, along with all the other evidence in the case. Even if it be conceded that on the state of facts in this record this instruction should not have been given, we cannot see how it injured appellant. Counsel for appellant do not attempt to show that the amount of the verdict was not fully justified by the evidence. The jury were told in this instruction what to do if they believed, from the evidence, that there was any specific benefit, but were not told that their own

view of the premises should be given greater weight than the evidence received and heard on the witness stand or what weight should be given to any particular evidence bearing on this point.  We do not think the jury were misled by the giving of this instruction.

Lastly, it is contended that the verdict cannot be sustained because it does not specifically describe the property of appellant that was taken or damaged.  The verdict reads : "We, the jury in the above entitled cause, do hereby report to the court that we have gone upon the premises described in the petition.  * * *  We, the jury, assess the damages of the defendant, Schoening-Koenigsmark Milling Company, for land actually taken for the proposed ditch, at $750.  We further assess the damages of said milling company to property damaged but not taken at $600."  The verdict should be definite and certain and should follow the description in the petition, (*Chicago, Ottawa and Peoria Railway Co.* v. *Rausch,* 245 Ill. 477,) but it is not necessary that the description should be fully set out in the verdict.  The description of the land taken or damaged may be clear and certain by reference in the verdict to the description of the land in the petition.  (*Suver* v. *Chicago, Santa Fe and California Railway Co.* 123 Ill. 293; *Helm* v. *City of Grayville,* 224 id. 274; *Peoria, Bloomington and Champaign Traction Co.* v. *Vance,* 234 id. 36.)  It is not claimed that the petition and cross-petition do not properly describe the property.  We think the reference in the verdict to the description of the property in the petition makes clear the actual property taken from the defendant.

We find no reversible error in the record.  The judgment of the county court will be affirmed.

*Judgment affirmed.*